## Dubois v. Dubois.

1. **Contract:** SALE OF LAND: BROKERAGE.  Facts considered which were held to entitle the plaintiff to a commission as broker in negotiating the sale of a farm.

*Appeal from Monona Circuit Court.*

TUESDAY, JUNE 22.

THE plaintiff, on the 30th day of October, 1879, filed in the court below a claim, duly verified, of which the following is a copy:

" Joseph Dubois, executor of the last will and testament of P. F. Seigneur, deceased, and executor of the estate of said deceased, in account with Victor Dubois, debtor, June 18, 1877:  To commissions for sale of land for $4,000, at five per cent, as per agreement with said P. F. Seigneur, said agreement and sale having been made during the lifetime of said Seigneur, $200, and interest thereon at six per cent from June 18, 1877, amounting to $227.40.

"V. DUBOIS."

The claim was denied.  The issue was tried to the court and the amount claimed was by the judgment of the court

Dubois v. Dubois.

allowed as a valid claim against said estate. Defendant appeals. .

*McMillen & Martin* and *Geo. W. Wakefield*, for appellant.

*Monk & Selleck*, for appellee.

ROTHROCK, J.—The principal question in the case is, was the court below warranted in finding from the evidence that 1. CONTRACT: the claim of the plaintiff was a valid unsatisfied sale of land: brokerage. claim against the estate of P. F. Seigneur, deceased? It appears that the deceased was a Frenchman, and the plaintiff was of the same nationality. They were neighbors, living on farms in Monona county. In 1876 plaintiff, with his wife, went on a visit to France. On the 1st day of March, 1876, Seigneur wrote a letter to the plaintiff. That part of the letter material to this controversy is as follows:

"SLOAN, 1st March, 1876.

"*Mr. V. Dubois, a la Bastide de Virac Dep. de l' Ardeche, France:* You will, without doubt, be a little surprised at receiving these lines from me, but I wished to see you before your departure for France and talk to you on the subject of this letter, but I could not, your departure being two or three days earlier than your son Victor advised me; whom I met in the woods the 14th February. But I will come at once to the subject of my letter. You know that I wish to sell my farm and all the land that I possess. Now then, if you could sell it for $4,000—that I made the mistake of refusing from Straus—I give you as a recompense $200. I suppose that you will bring with you some emigrants and that they would like to settle near you, that you might aid them at first. Now then, if one or two or several of them were able to buy my farm, you would render me a great service by engaging them to buy my place, and I would be happy to recompense your service by giving you the sum I have said to

you.   If you believe that this could not be done you will oblige me by writing me where I could get the money as a loan on my farm, because I have not made a crop this year, and I must pay for my wood in the month of August, and I have not enough.   I am told that you can borrow in this manner at 8 per cent.   I would be much obliged if you will inform me about these things, but if you could aid me to sell my farm I should like it much better.

\*        \*        \*        \*        \*        ·  \*        \*        \*

(Signed)        P. F. SEIGNEUR."

The record does not show that any reply was made by the plaintiff to this letter.   Plaintiff returned from France July 12, 1876.   June 17, 1877, one Chas. Rauselle, a Frenchman, · having obtained plaintiff's address in New York City, called on the plaintiff and desired to purchase a farm.   Plaintiff told him of Seigneur's farm, and went with him to examine it.   The next morning all the parties met at plaintiff's house, and Seigneur asked something more than $4,000 for the farm. Plaintiff told Seigneur to " be kind of reasonable," and after reflecting for a little while Seigneur said he would take $4,000. The bargain was closed, and a deed made to Rauselle, which plaintiff carried to the recorder's office for record.   About two weeks after the sale the plaintiff stated to one of the witnesses that he told Rauselle to give Seigneur $4,000, and no more, and that Seigneur wanted more for his land, and that he (plaintiff) " fetched him to terms."

These are the material facts as shown by the record before us.   We are required to view the findings of the court the same as we would the verdict of a jury, and the judgment must be affirmed unless it is so manifestly without support in the evidence as to lead to the conclusion that it was the result of passion or prejudice.

It is urged that the offer made by Seigneur in his letter of March 1, 1876, was limited as to time, and that a fair construction of it implies that the sale should be made by

the time Seigneur was required to pay for his wood in August, 1876, and that it contemplated a sale in France, or to some emigrants who might come with plaintiff from that country. It is undoubtedly correct that it was in the mind of Seigneur that plaintiff might be able to make a sale to some one who should come from France, but that it was limited as to time nowhere appears. It is further urged that more than a year elapsed between the writing of the letter and the sale, and that plaintiff in making the sale acted as the agent of Rauselle, and not as the agent of Seigneur. But it does not appear that the land had risen in value, nor that Seigneur had added to its value in the way of improvements. And the statement of plaintiff to Seigneur, when he wanted more than $4,000, that he must be reasonable, was consistent with the letter of the latter when he fixed the price at $4,000, and authorized the plaintiff to sell for that sum. It clearly appears from the evidence that Rauselle sought out the plaintiff as a proper person to show him a suitable farm; that the plaintiff took him to Seigneur, and the result was a sale. One of the witnesses testified that he told Rauselle of farms for sale, but he would "not hear to it until they went and seen this one."

We have not given all the evidence. The foregoing is a statement of most of the material facts. Whatever our views may be as to the preponderance of evidence, we do not feel at liberty to interfere with the judgment. We cannot put ourselves in the place of the learned judge of the court below, who heard the evidence and observed the demeanor of the witnesses as they testified.

AFFIRMED.